IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| WILLIAM O. MULLIGAN, | ) | |
| | ) | Case No. 7:05CV5005 |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROYCE HUBER, Refuge Manager, | ) | |
| Fort Niobrara National Wildlife Refuge, | ) | |
| DAVE WISEMAN, Refuge Supervisor, | ) | |
| RALPH MORGANWECK, Regional | ) | |
| Director USF&W Region 6, | ) | |
| MATTHEW J. HOGAN, Acting | ) | |
| Director of the United States Fish | ) | |
| and Wildlife Service, and GALE A. | ) | |
| NORTON, Secretary of the United | ) | |
| States Department of the Interior, | ) | |
| | ) | |
| Defendants. | ) | |

This suit challenges the federal government's river management plan for a portion of the Niobrara river. That river has been designated as a National Wild and Scenic River. It flows through the Fort Niobrara National Wildlife Refuge. This action is brought by one person, Mr. William O. Mulligan (Mulligan). Mulligan seeks injunctive and declaratory relief to stop enforcement of the plan.

Mulligan's amended complaint fails to sufficiently allege that he has constitutional standing to bring this suit. The evidence offered by both parties also establishes that Mulligan lacks constitutional standing. As a result, I will grant the defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and this case will be dismissed without prejudice. Although briefly, the reasons for my decision are more fully explained in the following portions of this memorandum.

# I.  BACKGROUND

In general, the historical facts and legal underpinning of the federal government's interest in, and its regulation of, the Fort Niobrara National Wildlife Refuge and portions of the Niobrara river are set forth in one of my previous cases. See Niobrara River Ranch, L.L.C. v. Huber, 277 F. Supp. 2d 1020 (D. Neb. 2003), aff'd, 373 F.3d 881 (8th Cir. 2004) (unsuccessful applicant for special use permit to operate commercial canoeing operation on a river in a national wildlife refuge brought suit alleging that denial of the permit by Fish and Wildlife Service violated the Administrative Procedures Act; held that the denial of the permit was not arbitrary and capricious or contrary to the law and temporary moratorium under which no new outfitters would be issued permits did not violate National Wildlife Refuge System Act).  With that context adopted and incorporated herein, I turn to the specifics.

## A.  The Amended Complaint and the Motion to Dismiss

Mulligan filed his complaint on March 31, 2005.  (Filing 1.)  After an answer was submitted (filing 20), he moved to amend his complaint.  (Filing 27.)  The motion to amend was granted (filing 36) and on November 15, 2005 the amended complaint was filed.  (Filing 37.)  On December 16, 2005, the motion to dismiss was filed.  (Filing 44.)  The motion, and the supporting brief (filing 45), asserted that the amended complaint failed to sufficiently allege standing.

When filed, the motion did not rely upon evidence extrinsic to the amended complaint.  But, and as we shall see, that changed when Mulligan filed a brief and affidavit that attempted to "flesh out" the amended complaint, and the government submitted a brief and affidavit in response.

Mulligan seeks injunctive and declaratory relief prohibiting enforcement of the river management plan.  (Filing 37 ¶¶ 42-49.)  He claims, essentially, that the

defendants failed to comply with the Administrative Procedure Act[1] when they adopted the Fort Niobrara National Wildlife Refuge River Recreation Management Plan. (Filing 37 ¶¶ 33-41.)[2]  The plaintiff alleges that he uses "the Cornell Dam launch site" in order to access "the Niobrara River from that location for recreation and solitude." (Filing 37 ¶ 1.)  Without elaboration, he also claims that he will be "irreparably harmed" if I do not enjoin the defendants from enforcing the management plan. (Filing 37 ¶ 43.)

There are no other allegations in the amended complaint that clearly address whether Mulligan possesses constitutional standing.  For example, the "Factual Background of Case" (filing 37 ¶¶ 21-32) does not even mention the plaintiff.  Nor does the amended complaint state how Mulligan might be harmed or how the relief he seeks would avert that harm.  On the contrary, and while ostensibly relying upon "all of the allegations of the Amended Complaint[,]" Mulligan seems to claim that the allegations recited above are, alone, sufficient to withstand the motion to dismiss. (Filing 48 at 5 (Br. in Opp'n to Mot. to Dismiss).)  In particular, he states:

> Plaintiff's Amended Complaint alleges that Plaintiff is a regular user of the Cornell Dam launch site which is subject to administration under the challenged "River Management Plan." (Complaint at ¶ 1.) It alleges that he utilizes the Niobrara River from that location for recreation and solitude. (Id.) The challenged plan itself recognizes these uses as proper, compatible, and permitted. (Complaint at ¶ 31, Exhibit B to Complaint at 6, 11, 13.) Preservation of opportunity for solitude is a prioritized consideration. (Id., Exhibit B to Complaint at 11-13, 26, 36.)

---

[1]5 U.S.C. § 706 sets forth the scope of review.

[2]The river management plan was adopted on February 1, 2005. (Filing 54-2 at 1-2 (Aff. of Royce R. Huber).)

-3-

Thus, the Plaintiff has exhibited status as a person to be impacted or affected by the administrative management plan at issue and its restrictions and regulations operate directly against him.

(<u>Id.</u>)

The plaintiff's able lawyer *in his brief* also tries to add meat to the bare bones of the pleading by making arguments about the meaning of certain allegations contained in the complaint. (<u>Id.</u> at 10-11.) For example, citing to paragraphs 31 and 38.11 of the amended complaint, counsel asserts that the plan "requires payment of launch or access fees for use of the Cornell Dam Launch site on the part of the Plaintiff, even though applicable regulations prohibit charging or collection of launch fees from users such as the Plaintiff." (<u>Id.</u> at 10-11 ¶ 3.) The difficulty is that neither paragraph 31 nor paragraph 38.11 of the amended complaint, in fact, mention the plaintiff or fees. Thus, the plaintiff, without leave of the court, has attempted to amend his amended complaint through his counsel's brief.

By pursuing this loose characterization of the actual words of the amended complaint, the plaintiff's *brief* suggests that there are six reasons why the amended complaint sufficiently alleges standing. That is, Mulligan's counsel asserts in his brief that standing exists because (1) the plan restricts use of such things as alcohol and water guns; (2) the plan contemplates the gathering of private data; (3) the plan requires the payment of launch fees; (4) the plan contemplates extension of law enforcement authority to non-sworn employees; (5) the plan restricts use of the launch site to daylight hours; and (6) the plan restricts the number of users of the launch site to "less than what have historically accessed the river from that site, thereby creating a probability that Plaintiff will be entirely barred from launching from the Cornell Dam Launch Site, particularly later in the year." (<u>Id.</u> at 11.)

## B.  Mulligan's Affidavit

Perhaps sensing that he was in trouble, and in response to the motion to dismiss, Mulligan also submitted evidence.  In particular, he submitted his own affidavit. (Filing 49-2.)  Condensed, and as most pertinent to the standing question, Mulligan made the following points in his affidavit:

*       Residing near the refuge and river, Mulligan is a native Nebraskan who serves on the local natural resource district's board of directors.[3] (Id. ¶¶ 1-3.)  He is a licensed real estate appraiser and insurance salesperson.  (Id. ¶ 2.)  Mulligan is also "an active recreational canoeist and kayaker" who frequently uses the river with his family, friends and guests.  (Id. ¶¶ 5-6.)

*       A particularly scenic portion of the river runs through the refuge. (Id. ¶¶ 6-7.)  In order to access this portion of the river, one must use the "Cornell Launch Site" which is at the entrance of the refuge.  (Id. ¶ 8.) This site is the only upstream access point for this portion of the river. (Id. ¶¶ 8-13.)

*       Mulligan believes the plan will have some unspecified impact on professional outfitters and that impact will in turn harm the plaintiff.  (Id. ¶ 17.)  He needs and uses professional outfitters to provide a shuttle service (presumably from the exit or downstream location to the entrance or upstream location) when he uses the river.  (Id.)  If there are no outfitters, Mulligan fears that he will violate the plan if he provides his own shuttle service.  (Id.)

---

[3]Mulligan brings this suit personally and he does not claim to represent the natural resources district.

\*       Royce Huber has instructed his employees to patrol, and he has
participated in patrols of, the river and these patrols are unwelcome and
not visitor friendly.  (<u>Id.</u> ¶ 18.)  The plaintiff has seen refuge officers at
the launch site and on one occasion Mulligan was treated rudely.  (<u>Id.</u>)

\*       Without elaboration, Mulligan believes that if implemented the
plan will "greatly restrict my access and the access of the public to the
Niobrara River and will discourage outfitters and others from providing
shuttle services on the river, thereby depriving me, my family, and
friends access . . . ."  (<u>Id.</u> ¶ 20.)

\*       Without elaboration, Mulligan believes the plan will cause and has
caused overcrowding in other portions of the river.  (<u>Id.</u> ¶ 21.)

## C.  The Government's Evidentiary Response

As noted above, the plaintiff's brief proposed six reasons why the complaint
sufficiently alleged standing.  Royce R. Huber (Huber), the refuge manager since
1992, submitted a sworn affidavit in response to these six unsworn arguments.  (Filing
54-2.)  In that affidavit, Huber asserted the following:

\*       In response to the plaintiff's first point regarding the limitation of
alcohol and squirt guns and the like, these restrictions and other similar
restrictions had been imposed before the plan and these restrictions
would exist even if the plan was withdrawn or set aside.  (<u>Id.</u> at 2 (point
one).)

\*       With regard to the second point respecting the gathering of private
data, that information, collected on a user fee payment envelope, is in
compliance with the Privacy Act.  (<u>Id.</u> at 2 (point two).)  Moreover, the
collection of that information started in 1998, before the plan was

adopted, when Congress first authorized the collection of a user fee.
(Id.)  As a result, the plaintiff's concern about private data would not be
redressed if the plan were withdrawn or set aside.  (Id.)

*      Regarding the third point about user fees, the authorization to
collect user fees was first given in a 1996 Congressional appropriations
bill and, subsequently, by an additional law adopted by Congress.  As a
result, user fees have been collected since 1998.[4]  (Id. at 2-3 (point 3).)
Thus, the plaintiff's concern about user fees would not be remedied if the
plan were set aside or withdrawn.  (Id.)

*      Regarding the fourth concern about the extension of law
enforcement authority to non-sworn officers, that concern is unfounded
because no such thing is planned.  (Id. at 3 (point 4).)  Indeed, the law
enforcement and monitoring activities have not changed with the plan.
(Id.)  Still further, the same law enforcement activities would still be in
place if the plan were withdrawn or set aside.  (Id.)

*      With regard to the fifth concern respecting the limitation on the
use of the launch site and portion of the river that flows through the
refuge to daylight hours only, that limitation has always been in place.
(Id. at 3 (point 5).)  Indeed, brochures distributed since at least 1986
notified users of the "daylight hours only" policy.  (Id.)  As a result, the
restriction would remain in place even if the plan were withdrawn or set
aside.  (Id.)

_____

[4]It is also worth noting that Mulligan's affidavit attaches a letter he wrote to a
deputy refuge manager which seems to suggest that a $2.00 user did not harm him, but
rather harmed "lower income families."  (Filing 49-2 (attachment).)  Thus, on this
point, Mulligan apparently bases his standing claim on the harm that others might
suffer.

\*      Regarding the sixth issue that the limitation on the number of users create a probability that the plaintiff will be barred from use of the river through the launch site, such an allegation is speculative.  (<u>Id.</u> at 4 (point 6).)  Since the adoption of the plan no one has been barred.  (<u>Id.</u>)  Moreover, the annual cap of 20,300 is far higher than the 11,500 people who used the river in 2005 and the 11,980 people who used the river in 2004.  (<u>Id.</u>)  Still further, the plan is designed to apportion use of the river if the "cap" is ever reached "so that opportunities to float exist year-round."  (<u>Id.</u>)

## *II.  ANALYSIS*

A lack of constitutional standing means a federal court lacks subject matter jurisdiction (legal power) to hear a case.  <u>See</u>, <u>e.g.</u>, <u>Sierra Club v. Robertson</u>, 28 F.3d 753, 757 (8th Cir. 1994) (holding that environmental groups' challenge to Forest Service management plan must be dismissed for lack of constitutional standing because the groups did not show any current injury).  "The 'irreducible constitutional minimum of standing' contains three requirements."  <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 102-03 (1998) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)).  Those three requirements are:

First and foremost, there must be alleged (and ultimately proved) an injury in fact–a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical. Second, there must be causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability–a likelihood that the requested relief will redress the alleged injury.

<u>Id.</u> at 103 (internal quotation marks and citations omitted).

-8-

### A.  *"Facial" and "Factual" Attacks to Subject Matter Jurisdiction*

Before proceeding to the guts of the standing question, it is important to recognize that the motion to dismiss was made by the defendants without reference to evidence.  *It was the plaintiff* who introduced evidence in response to the defendants' motion.  Thereafter, the defendants submitted rebuttal evidence.  This series of events has significance.

First, please remember that I am confronted with a motion submitted under Rule 12(b)(1).  Such a motion challenges my very power to hear the case.  I have two ways to resolve such a motion.  I may resolved the motion "facially" or "factually."  Osborn v. United States, 918 F.2d 724, 728-30 & n. 6 (8th Cir. 1990) (explaining the difference between a "facial" and "factual" resolution of a Rule 12(b)(1) motion).

When a Rule 12(b)(1) motion attacks only the words of the complaint, that is called a "facial attack."  Id. at 728 n.6.  The writer of the complaint is accorded the same protections, and held to the same standard, as when defending a motion to dismiss brought under Rule 12(b)(6).  Id.

However, the court and the parties are *not* limited under Rule 12(b)(1) to the words of a complaint.  A district court has the authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1) and, if it does, disputed issues of material fact will *not* prevent the court from deciding for itself the merits of jurisdictional claims.  Id. at 728-29.  Nor does the submission of evidentiary materials in connection with a 12(b)(1) motion convert the motion to one for summary judgment under Rule 56.  Id. at 729.

Second, because it was *the plaintiff* who first presented evidence, I do not know whether *the defendants'* motion should be treated as a "facial attack" or a "factual attack."  I will, therefore, consider the standing question both ways.

-9-

Third, no matter how the motion is viewed, the plaintiff must ultimately convince me that he has standing and I have subject matter jurisdiction. See, e.g., Lujan, 504 U.S. at 561 (regardless of the stage of the proceedings, the "party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing].") Although the plaintiff's experienced lawyers have labored mightily on his behalf, I remain unconvinced that Mulligan has standing. I next explain why that is so.

## B.  Mulligan's Amended Complaint is Insufficient

Mulligan's amended complaint alleges no more than that he uses the river, a management plan will regulate river usage, and he will somehow be irreparably harmed. Even giving him all the benefits of notice pleading, Mulligan's amended complaint fails to sufficiently allege the three requirements of standing. Mulligan's amended complaint is based on vague, speculative and uncertain injury and the injury (whatever that might be) is not clearly shown to be causally connected to the plan nor fixable by any action I might take. See, e.g., Shain v. Veneman, 376 F.3d 815, 818 (8th Cir. 2004) (affirming Rule 12(b)(1) dismissal for lack of standing; stressing that in order to survive a motion to dismiss for lack of standing a complaint must allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."), cert. denied, 543 U.S. 1090 (2005).

## C.  Mulligan's Brief is Insufficient

Mulligan's brief raising six points why his amended complaint establishes standing is also insufficient. There are several reasons why this is so.

A brief is not a complaint. Having once amended his complaint with leave of the court, the rules do not allow Mulligan to use his brief as a de facto "second amended complaint." See, e.g., Fed. R. Civ. P. 15(a) (after a responsive pleading has been filed, an amendment is prohibited without leave of the court). Thus, Mulligan

-10-

may not establish standing by making statements in his brief that do not accurately represent what the amended complaint actually and specifically alleged.

More fundamentally, the six points raised in Mulligan's brief have been indisputably[5] shown by Huber's affidavit to be fanciful.  While I could provide more, two examples illustrate this point:

> \*      Five[6] of Mulligan's concerns are not causally connected to the plan nor would they be alleviated by a favorable decision.  This is because each of the predicates for those concerns predated the plan and do not arise because of the plan.

> \*      The sixth concern, Mulligan's worry that he may be barred from using the river because of a cap on river usage, is entirely speculative. While there is a cap, the limitation allows over 20,000 people to use the river and in the past two years no more than 11,980 people have accessed the river in any one year.  As a result, Mulligan cannot plausibly claim actual harm or an imminent threat of harm.

---

[5]Mulligan did not file, or seek leave to submit, a responsive affidavit.

[6]Condensed, those five points are: limitations on alcohol and the like; gathering of private data; collection of user fees; law enforcement authority; and "daylight hours" restriction.

### D.  Mulligan's Affidavit is Insufficient

Mulligan's affidavit is likewise insufficient.  It is far too vague to provide any basis for constitutional standing.   Again, and while I could provide more, two examples illustrate the reasons for my decision:

>       *       In his affidavit, Mulligan worries about the plan's impact on outfitters.  He fails to explain how the plan has now harmed or will imminently harm outfitters and he fails to explain how that harm might render outfitters unable to serve him.  Thus, Mulligan's injury claim based upon some unspecified impact on outfitters is hypothetical only.

>       *       In his affidavit, Mulligan, without elaboration, states that he believes the plan has caused and will cause overcrowding in other portions of the river.  Without at least some reasoned explanation, Mulligan's speculation about overcrowding is pure conjecture.

### E.  No Further Amendments Will be Permitted

Because Mulligan has been given an opportunity to amend his complaint once and because Mulligan has also submitted both a brief and evidence in support of the standing issue, and because Mulligan has failed to establish standing despite these opportunities, the interests of justice would not be served by allowing any further amendments.  In particular, this case has now been pending more than one year and it has not progressed past the pleading stage.  Any further amendments would only delay this case even longer.  As a result, I will not allow Mulligan to amend his amended complaint. See, e.g., Doe v. School Dist. of Norfolk, 340 F.3d 605, 615 (8th Cir. 2003) (where the plaintiffs lacked standing to challenge school district's past policy allowing prayer, the district court did not abuse its discretion in refusing to allow amendment to complaint when leave to amend would result in significant delay).

-12-

### III.  CONCLUSION

Whether I look only at Mulligan's amended complaint or whether I also consider his brief and affidavit, there is no adequate showing that he poses constitutional standing.  As I result, I will dismiss Mulligan's amended complaint for lack of subject matter jurisdiction.

IT IS ORDERED that:

1.      The motion to dismiss (filing 44) for lack of subject matter jurisdiction is granted.

2.      Judgment will be entered by separate document.

April 10, 2006.                                    BY THE COURT:

                                                   *s/Richard G. Kopf*
                                                   United States District Judge